IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

ARLENE M. EICHLING,            )
                               )
         Plaintiff,            )
                               )
v.                             )    Case No. 10-CV-747-PJC
                               )
MICHAEL J. ASTRUE, Commissioner of the )
Social Security Administration, )
                               )
         Defendant.            )

**OPINION AND ORDER**

Claimant, Arlene Michele Eichling ("Eichling"), pursuant to 42 U.S.C. § 405(g), requests judicial review of the Decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability benefits under the Social Security Act. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will be directly to the Tenth Circuit Court of Appeals. Eichling appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Eichling was not disabled. For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision.

**Claimant's Background**

Eichling filed her application for disability insurance benefits on January 3, 2008. (R. 167-69). Eichling was born on March 20, 1969, and was 40 years old at the time of the ALJ's decision on February 26, 2010. (R. 24,167). She has completed her Bachelor of Science degree in early childhood education. (R. 33). She alleges an inability to work since February 12, 2007.

1

(R. 32, 68). At the hearings on June 1, 2009 and January 7, 2010, Eichling testified that she could not work due to memory problems, short attention span, depression, anxiety, paranoia and panic attacks. (R. 37-42, 70).

Eichling was diagnosed with and prescribed medication for depression and anxiety by her regular physician, Michael E. Maddox, D.O. from July 13, 2005 through November 3, 2007. (R. 245-46). Dr. Maddox recommended that she seek counseling. (R. 246).

Eichling presented to psychiatrist David L. Shadid, D.O. and his physician assistant, Sarah Aufedt on March 29, 2006 and was diagnosed as having generalized anxiety disorder and depression. (R. 278). She was evaluated at that time with a Global Assessment of Functioning[1] score of 50. *Id*. She continued to see Dr. Shadid and/or Ms. Aufedt almost monthly for continued medication for her depression, anxiety and mood disorder through June 2, 2009. (R. 259-78, 297-300, 302-10).

On May 4, 2009, Dr. Shadid completed an Attending Physician's Statement for American Fidelity Assurance Company, Eichling's disability insurer. (R. 317). Dr. Shadid stated that he had been treating Eichling since March 29, 2006 for a mood disorder and opined that she had "more than likely permanent disability." *Id.* He noted that Eichling's impairments included anxiety which caused her to struggle in public settings and have increased number of panic attacks, mood swings caused by overstimulation and being easily overwhelmed, trouble sleeping,

---

[1] The GAF score represents Axis V of a Multiaxial Assessment system. *See* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR), 32-36 (4th rev. ed. 2000). A GAF score is a subjective determination which represents the "clinician's judgment of the individual's overall level of functioning." *Id*. at 32. The GAF scale is from 1-100. A GAF score between 21-30 represents "behavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment . . . or inability to function in almost all areas." *Id*. at 34. A score between 31-40 indicates "some impairment in reality testing or communication . . . or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." *Id*. A GAF score of 41-50 reflects "serious symptoms . . . or any serious impairment in social, occupational, or school functioning." *Id*.

2

poor energy and motivation; and she struggled "financially to pay for meds, appts & therapy." *Id*. Her current treatment plan was to continue Lamictal, Prozac, Trazodone and Ativan, be rechecked every 1-2 months, and go to therapy. *Id*.

On June 2, 2009, Eichling presented with increased symptoms and Dr. Shadid recommended that Eichling have a psychological evaluation with a psychologist "that does disability," go to therapy and continue on her medications. (R. 329).

A Mental Medical Source Statement ("MMSS") was completed by Ms. Aufedt on June 3, 2009, on behalf of Dr. Shadid. (R. 330-33). The MMSS noted that Eichling was markedly limited in the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to work in coordination or proximity to others without being distracted by them; the ability to accept instructions and respond appropriately to criticism for supervisors; the ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; the ability to respond appropriately to change in the work setting; and the ability to set realistic goals or make plans independently of others. (R 330-332). Further, Eichling was severely limited in the ability to travel in unfamiliar places or use public transportation, to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods. (R. 331-332). Eichling was also moderately limited in eight additional categories. (R 330-332). In her functional capacity assessment of Eichling, Ms. Aufedt reported that Eichling could function "ok" on her medications and in controlled/low stress environments but with changes in routine or added stressors from work and/or family, she emotionally "melts down." (R. 333).

3

On July 17, 2009, Eichling was evaluated by psychologist, Joseph Schwartz, Ph.D., by way of referral from Laureate Psychiatric Institute. (R. 334-349). Dr. Schwartz diagnosed Eichling with major depressive disorder recurrent without psychotic features and assigned her a GAF score of 43, based on the Millon Clinical Multi-Axel Inventory-III ("MCMI-III") test administered to Eichling on June 23, 2009. (R. 336). Dr. Schwartz also completed a Mental Residual Functional Capacity Assessment ("MRFCA") which noted several severe limitations and marked limitations. (R. 348-49). Dr. Schwartz opined that Eichling "does meet the social security standards for disability."

Eichling underwent a post-hearing consultative examination by John W. Hickman, Ph.D. (R. 318-328). After administering the Mental Status Exam, Wechsler Adult Intelligence Scales-III, Wechsler Memory Scales-III, the Beck Depression Inventory-II and Anxiety Inventory and the Minnesota Multiphasic Personality Inventory-II, Dr. Hickman diagnosed Eichling with bipolar disorder and anxiety disorder with panic attacks and assigned a GAF score of 55. (R. 323). Dr. Hickman concluded that the Claimant could not return to her teaching but did think "it is possible that she maybe able to cope with simpler vocational activities that do not require social interactions or rapid retrieval of information." (R. 323). Dr. Hickman further stated, "I think she is at risk for behavioral deterioration and regressive functioning if her stress tolerance is exceeded by the combined demands of home and complex vocational activities." (R. 324). Dr. Hickman also completed a MMSS indicating that Eichling was moderately limited in the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, maintain attention and concentration for extended periods, work in coordination or proximity to others without being distracted by them, complete a normal work day and work week without interruptions from psychologically based symptoms, and perform at

4

a consistent pace without an unreasonable number and length of rest. (R.324-327).

At the hearings before the ALJ, Eichling testified that her severe mental problems began when DHS took her four children from her and her husband for a period of six months. (R. 70, 78). She said she couldn't walk into a building without having a panic attack and couldn't be around crowds. *Id*. When her children were returned to their custody, Eichling could not take care of them without her mother's help. Her mother took her children to school and picked them up and helped them with their homework and also took Eichling to run errands, pay bills, and get to doctor appointments. (R. 74-75). Eichling can cook dinner and clean up but can't get laundry done without help and only drives when she has to. (R. 77-78).

## Procedural History

On January 3, 2008, Eichling filed her application for disability insurance benefits. (R. 167-69). In her original application, Eichling alleged disability beginning January 2, 2005. *Id*. Eichling's attorney at the initial hearing before the ALJ on June 1, 2009 indicated that she was amending the onset date to February 12, 2007. (R. 68). Eichling's application for benefits was denied in its entirety initially and on reconsideration. (R. 85-86). Eichling appeared and testified at the June 1, 2009 hearing where the ALJ granted her attorney's request that Eichling undergo a consultative examination by psychologist, John W. Hickman, Ph.D. (R. 59-84). A second hearing before ALJ Voltz was held on January 7, 2010. (R. 29-84). By decision dated February 26, 2010, the ALJ found that Eichling was not disabled at any time from February 12, 2007 through the date of the decision. (R. 12-24). On September 22, 2010, the Appeals Council denied review of the ALJ's findings. (R. 1-5). Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 404.981.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520.[2] *See also Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) (detailing steps). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams*, 844 F.2d at 750.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

Substantial evidence is such evidence as a reasonable mind might accept as adequate to

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step Two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings"). A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to Step Four, where the claimant must establish that she does not retain the residual functional capacity ("RFC") to perform her past relevant work. If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account her age, education, work experience, and RFC, can perform. *See Dikeman v. Halter*, 245 F.3d 1182, 1184 (10th Cir. 2001). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

support a conclusion. *Id.* The court's review is based on the record taken as a whole, and the court will "meticulously examine the record in order to determine if the evidence supporting the agency's decision is substantial, taking 'into account whatever in the record fairly detracts from its weight.'" *Id., quoting Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The court "may neither reweigh the evidence nor substitute" its discretion for that of the Commissioner. *Hamlin,* 365 F.3d at 1214 (quotation omitted).

## Decision of the Administrative Law Judge

The ALJ found that Eichling met the insured status requirements through December 31, 2012. (R. 13). At Step One, the ALJ found that Eichling had not engaged in any substantial gainful activity since her alleged onset date. (R. 15). At Step Two, the ALJ found Eichling's bipolar disorder and panic attacks to be severe impairments. *Id.* At Step Three, the ALJ found that these impairments did not meet Listing 12.04 and 12.06. *Id*.

The ALJ determined that Eichling had the RFC to perform the full range of light work, except she is "limited to simple repetitive work, limited interaction with co-workers, supervisors and the general public and cannot perform rapid retrieval of information." (R. 17). At Step Four, Eichling was unable to perform past work as an early education teacher. (R. 24). At Step Five, the ALJ found that there were significant number of jobs that a person with Eichling's age, education, work experience and RFC could perform: *e.g.*, laundry sorter, DOT 361-687-014, which is light unskilled work with 9,000 jobs in the region and 115,000 in the national economy; mail room clerk, DOT 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, which is unskilled light work with 16,000 jobs in the region and 170,000 jobs in the national economy; clerical mailer, DOT 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, which is unskilled, sedentary work with 7,500 jobs in the region and 88,000 jobs in the national economy; and trimmer, DOT 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, which is unskilled sedentary work with 4,600 jobs in the region

and 56,000 in the national economy,. (R. 24-25). Therefore, the ALJ found that Eichling was not disabled at any time from February 12, 2007 through the date of his decision. (R. 25).

## Review

Eichling asserts that the ALJ's decision should be reversed for failing to properly analyze the opinion of her treating physician assistant and for not being supported by substantial evidence.

Eichling contends that the ALJ erred by failing to properly analyze the opinion of Ms. Aufedt's in the June 3, 2009 MMSS. She argues that Ms. Aufedt, as Dr. Shadid's physician's assistant, is considered an "other source" under Social Security Ruling (hereafter, "SSR") 06-03p,[3] and, as such, the ALJ should have analyzed the factors contained in 20 C.F.R. §404.1527 in considering Ms. Aufedt's MMSS, rather than reject it because she was not "an acceptable medical source."

The Commissioner contends that the ALJ thoroughly discussed Ms. Aufedt's assessment that, in twenty measured abilities, Eichling had moderate limitation in eight, marked limitation in seven, severe limitation in two and no significant limitation in three. (R. 20-21, 329-32). However, the ALJ appropriately discounted Ms. Aufedt's assessment because it was inconsistent with her own treatment notes and objective findings, as well as the record as a whole.

SSR 06-03p addresses, *inter alia*, how to consider opinions from medical sources who are not "acceptable medical sources," such as physician assistants. The Ruling explains:

---

[3]  Social Security Ruling 06-03p identifies "other sources" to include "[m]edical sources who are not 'acceptable medical sources,' such as nurse practitioners, *physician assistants*, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists." TITLES II AND XVI:II AND XVI: CONSIDERING OPINIONS AND OTHER EVIDENCE FROM SOURCES WHO ARE NOT "ACCEPTABLE MEDICAL SOURCES" IN DISABILITY CLAIMS; CONSIDERING DECISIONS ON DISABILITY BY OTHER GOVERNMENTAL AND NONGOVERNMENTAL AGENCIES, SSR 06-03p, 2006 WL 2329939, *2 (August 9, 2006)(Emphasis added).

8

> Information from these "other sources" cannot establish the existence of a
> medically determinable impairment. Instead, there must be evidence from an
> "acceptable medical source" for this purpose. However, information from such
> "other sources" may be based on special knowledge of the individual and may
> provide insight into the severity of the impairment(s) and how it affects the
> individual's ability to function.

SSR 06-03p, 2006 WL 2329939, *2. Noting that "not every factor for weighing opinion evidence will apply in every case," the Ruling, nonetheless, provides the following factors for the ALJ's consideration:

> • How long the source has known and how frequently the source has seen the
> individual;
> • How consistent the opinion is with other evidence;
> • The degree to which the source presents relevant evidence to support an
> opinion;
> • How well the source explains the opinion;
> • Whether the source has a specialty or area of expertise related to the individual's
> impairment(s); and
> • Any other factors that tend to support or refute the opinion.

*Id*. at *5. Indeed, after applying these factors, the opinion of a medical source who is not "an acceptable medical source" may even outweigh that of a treating source:

> For example, it may be appropriate to give more weight to the opinion of a
> medical source who is not an "acceptable medical source" if he or she has seen
> the individual more often than the treating source and has provided better
> supporting evidence and a better explanation for his or her opinion.

*Id*. And the ALJ should explain the weight given to these opinions in his decision for subsequent review:

> Although there is a distinction between what an adjudicator must consider and
> what the adjudicator must explain in the disability determination or decision, the
> adjudicator generally should explain the weight given to opinions from these
> "other sources," or otherwise ensure that the discussion of the evidence in the
> determination or decision allows a claimant or subsequent reviewer to follow the
> adjudicator's reasoning, when such opinions may have an effect on the outcome of
> the case.

*Id*. at 6.

The Court finds the ALJ properly considered and discussed the weight given to Ms. Aufedt's opinion. As noted by the Commissioner, the ALJ recited Ms. Aufedt's MMSS findings in his decision, including her statement that "Michele is a person that functions ok when on meds and in controlled/low stress environments," which the ALJ noted supports his RFC determination. (R. 22, 333). Further, the ALJ recognized that although Ms. Aufedt was not "an acceptable medical source," her "other source" objective findings and treatment notes were relevant and thus considered in determining the severity of Eichling's impairment and how such affected her ability to work. (R. 22). The ALJ acknowledged that Eichling "was generally seen" by Ms. Aufedt "on behalf of Dr. Shadid." *Id*. However, he discounted Ms Aufedt's MMSS, noting the assessments were inconsistent with her treatment notes and objective findings. *Id*. The ALJ cited Ms. Aufedt's notes that Eichling improved with medications, and on many of the visits in which Eichling complained of being overwhelmed and stressed, Eichling cited "factors such as getting fired from work, applying for other jobs, taking care of four children and her mother-in-law who had moved into the home." *Id*. He further noted that Eichling "had several 'no show' appointments and on several occasions it was noted she was not taking all of her medications or had not attended the recommended therapy due to financial difficulties." *Id*. And lastly, the ALJ reiterated Ms. Aufedt's statement that Eichling functioned "ok" when she stayed on her medications. *Id*., *Anderson v. Astrue*, 2011 WL 124604, at *7 (January 14, 2011)("The Tenth Circuit has noted that, when there is substantial evidence that a limitation is controlled or improved by treatment or medicine, it is appropriate to give it less weight in the RFC analysis."). The Court finds that the ALJ properly analyzed and weighed Ms. Aufedt's opinion.

Eichling further argues that the ALJ's decision is not based on substantial evidence because he improperly rejected Ms. Aufedt's and Dr. Schwartz' opinions and adopted the

10

opinion of Dr. Hickman, the consulting examiner. The Court disagrees. As the Court discussed above, the ALJ did not improperly reject Ms. Aufedt's opinion. Neither did he adopt Dr. Hickman's opinion in disregard of Ms. Aufedt's and Dr. Schwartz'. Rather, he weighed all the opinions in making his determination. Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). While the Court may have come to a different conclusion based on the evidence, the Court "may neither reweigh the evidence nor substitute [its] discretion for that of the [Commissioner]." *Id.*

## Conclusion

For the reasons stated above, the Court **AFFIRMS** the Commissioner's decision.

DATED, this 10th day of January, 2012.

_____
Paul J. Cleary
United States Magistrate Judge